United States District Court
Southern District of Texas
**ENTERED**
March 25, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **FLOYD JUNIOR JAYCOX,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Case No. 6:18-CV-00016** |
| | § | |
| **KENNY PYLE, D. DEMAS,** | § | |
| **R HENDERSON, RANDY CRIDER** | § | |
| **And DAN HEARD,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Floyd Junior Jaycox ("Plaintiff"), appearing *pro* se and *in forma* pauperis, has filed this prisoner civil rights action under 42 U.S.C. § 1983.  Pending before the Court are: (1) Defendant Kenny Pyle's Motion for Summary Judgment ("Pyle's Motion"), (Dkt. No. 54); and (2) Plaintiff's Motion for Direct and Final Judgment ("Plaintiff's Motion"), (Dkt. No. 64).  The referral of these motions to Magistrate Judge Julie K. Hampton is **TERMINATED**.  For the reasons discussed below, Pyle's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

## I.      PROCEDURAL BACKGROUND

While confined at the Victoria County Jail, Plaintiff filed this prisoner civil rights action. (Dkt. No. 1-1).  Plaintiff subsequently filed several Amended Complaints in which he sought to sue officials at the Victoria County Jail, officials at the Calhoun County Jail, Calhoun County prosecutors, a Calhoun County Magistrate Judge, and officers from the Port Lavaca Police Department.  (Dkt. Nos. 6, 7, 9, 11).

On October 15, 2018, District Judge Kenneth M. Hoyt ordered that Plaintiff's Original Complaint and Amended Complaints be stricken from the record.  (Dkt. No. 15 at 2–3).  Judge Hoyt further ordered Plaintiff to file an amended complaint by November 27, 2018, admonishing

Plaintiff "that his amended complaint must comply with the Federal Rules of Civil Procedure by including only one claim (*i.e.*, one set of related facts and circumstances stemming from one incident or issue), unless the other contentions alleged are related to the same incident." (*Id.*).

On November 5, 2018, Plaintiff filed his Amended Complaint, naming as the sole defendant Corporal Kenny Pyle from the City of Port Lavaca Police Department. (Dkt. No. 17 at 1, 3). Plaintiff claims that Corporal Pyle used excessive force against him during the course of his arrest on June 3, 2019. (*Id.* at 4). Liberally construed, he further claims that Corporal Pyle subjected him to a false arrest in violation of the Fourth Amendment. (*Id.*). For these alleged injuries, Plaintiff seeks monetary relief. (*Id.*).

On March 30, 2020, Judge Hoyt directed Plaintiff to file a more definite statement regarding his claims against Corporal Pyle. (Dkt. No. 29). Plaintiff subsequently filed his more definite statement. (Dkt. No. 30).

On October 12, 2020, Corporal Pyle filed his Motion for Summary Judgment along with attached exhibits. (Dkt. Nos. 54, 55). Plaintiff has filed a response to the summary judgment motion. (Dkt. No. 61). Plaintiff further moves the Court to enter a direct and final judgment in his favor. (Dkt. No. 64).

## II.     SUMMARY JUDGMENT EVIDENCE

Corporal Pyle offers the following summary judgment evidence in his motion:

Exh. A:     Corporal Pyle's Affidavit (Dkt. No. 54-1);

Exh. B:     Sergeant Eric Salles' Affidavit (Dkt. No. 54-2);

Exh. C:     Video of back seat of patrol car (Dkt. No. 55-1);

Exh. D:     Copy of Plaintiff's complaint filed in Case No. 6:18-CV-22 (Dkt. No. 54-3).

Plaintiff has submitted the following evidence:

- Plaintiff's Amended Complaint and More Definite Statement (Dkt. Nos. 17, 30);[1]

- Plaintiff's relevant medical records (Dkt. No. 61 at 24–41).[2]

On Friday, June 3, 2016, at approximately 10:15 p.m., Corporal Pyle was dispatched to 1800 S. Hwy 35, which is a SpeedyStop convenience store, in reference to a male (later identified as Plaintiff) attempting to start a maroon color vehicle with a screwdriver. (Dkt. No. 54-1 at ¶ 4). Upon arrival, Corporal Pyle observed a maroon Mercury with no license plates and Plaintiff inside leaning over the passenger seat. (*Id.*).

Corporal Pyle noticed that there was no key in the ignition slot in the steering column and that Plaintiff had a screwdriver in it instead. (*Id.* at ¶ 5). In addition to having no license plates, there was no valid registration. (*Id.*). Corporal Pyle asked Plaintiff to identify himself, which he did adding that "everyone knows me." (*Id.*). Corporal Pyle asked Plaintiff to step out of the vehicle three times before Plaintiff complied. (*Id.*).

When Plaintiff exited the vehicle, he started to walk in front of Corporal Pyle's patrol car, then walked to the passenger side of the vehicle, and then towards the back of the vehicle. (*Id.*). Corporal Pyle responded by walking after Plaintiff and directing him to put his hands behind his back in order to be detained for further questioning. (*Id.* at ¶ 6). Despite Plaintiff's reluctance, Corporal Pyle was able to place handcuffs on Plaintiff without incident. (*Id.*). Corporal Pyle escorted Plaintiff to the back door of the patrol car and placed him inside. (*Id.*). Plaintiff

---

[1]    Plaintiff's Amended Complaint and More Definite Statement serve as competent summary judgment evidence based on his representation "under penalty of perjury" that his statements made in these pleadings were "true and correct." *Hart v. Hairston,* 343 F.3d 762, 765 (5th Cir. 2003); *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

[2]    Plaintiff has also attached copies of Plaintiff's and Salles' affidavits to his Response. (Dkt. No. 61 at 42–49).

repeatedly referred to the maroon Mercury as "*my* vehicle." (*Id*.) (emphasis in original); (Video at 1:55 and 2:48).

Plaintiff states that Corporal Pyle pulled him out of his vehicle, handcuffed him, threw him into his patrol car, and then assaulted him without provocation, which caused him to hit his head on "something" in the patrol car. (Dkt. No. 30 at 2). Video from Corporal Pyle's patrol car shows that Plaintiff was placed in the patrol car with no injuries to his head. (Video at 3:24). Despite being the only person in the patrol car, Plaintiff struck his head three times on the partition between the front seat and back seat of the patrol vehicle. (*Id.* at 3:38 to 3:42). Plaintiff then struck his head two more times on the partition in a more violent manner. (*Id.* at 4:05 to 4:08). After his second set of strikes, Plaintiff began bleeding from his forehead. (*Id*. at 4:10).

While Plaintiff was in the vehicle, Corporal Pyle spoke with Christi Saingz, the manager of the SpeedyStop. (Dkt. No. 54-1 at ¶ 7). Corporal Pyle also checked the VIN number on the Mercury and learned that the vehicle should have had a license plate numbered 79B091 registered to Port Lavaca resident Ken Miller. (*Id.*).

When Corporal Pyle returned to the back of his patrol car, Plaintiff asked for an ambulance alleging that Corporal Pyle had "hit him" and because he "had a hole in his head." (*Id.* at ¶ 8; Video at 6:30 to 6:52). Corporal Pyle, who was behind the patrol car as shown in the Video, neither believed Plaintiff nor noticed he was bleeding. (Dkt. No. 54-1 at ¶ 8; Video at 6:30 to 7:05). Officer Pyle left the patrol car and continued to inventory the Mercury. (Dkt. No. 54-1 at ¶ 8).

Sergeant Salles arrived to assist Corporal Pyle at the scene. (*Id.* at ¶ 9; Dkt. No. 54-2 at ¶ 4). Approximately fifteen minutes after Corporal Pyle last spoke with Plaintiff, Sergeant Salles opened the patrol car to speak to Plaintiff. (Video at 21:55). Sergeant Salles noticed Plaintiff had

4

a substantial amount of blood on his head, face, and clothing.  (Dkt. No. 54-2 at ¶ 5).  Plaintiff told

Sergeant Salles that Corporal Pyle was the reason he had his injuries and that Corporal Pyle had

refused to provide medical services.  (*Id*; Video at 21:56 to 22:20).  Video of the patrol car's rear

seat shows Plaintiff with blood on his head and face at the time he interacted with Sergeant Salles.

(Video at 22:00 to 22:40).

Sergeant Salles directed Corporal Pyle to request dispatch to send EMS to the location.

(Dkt. No. at 54-2 at ¶ 6).  EMS arrived in the scene and began to assess Plaintiff's injuries.  (*Id.* at

¶ 6).  Sergeant Salles observed that Plaintiff had a cut on his head approximately one inch in length.

(*Id.*).  Plaintiff was uncooperative with EMS and did not want EMS personnel touching him.  (*Id.*).

Plaintiff asked to go to Memorial Medical Center in Port Lavaca.  (*Id.*).

Corporal Pyle rode with EMS and Plaintiff to the Memorial Medical Center emergency

room.  (Dkt. No. 54-1 at ¶ 9).  While at the emergency room, Plaintiff attempted to charge at and

bite Corporal Pyle.  (*Id.*).  Clinical notes reported that Plaintiff's head lacerations on his forehead

were due to hitting his head on the patrol car's partition after being placed in the car.  (Dkt. No. 61

at 28, 31).  Additional clinical notes reported that Plaintiff also had a "healing laceration to his

posterior scalp which appear[ed] to be at least 24 hours old."  (*Id.* at 31).  Around 11:00 p.m. on

June 3, 2016, emergency room staff treated Plaintiff by placing five staples in his forehead and

two staples in his posterior scalp.  (Dkt. No. 54-1 at ¶ 9; Dkt. No. 61 at 24–27).

While walking Plaintiff to the patrol car after his release from the hospital, Plaintiff

attempted to bite Corporal Pyle again.  (Dkt. No. 54-1 at ¶ 10).  Corporal Pyle forced Plaintiff back

into the patrol car with a wrist lock and then transported Plaintiff to the Calhoun County Adult

Detention Center.  (*Id.*).

In connection with the June 3, 2016 incident, Plaintiff was charged with interference with public duties and resisting arrest.  (*Id.* at ¶ 12).  Corporal Pyle believed he had reasonable suspicion to detain Plaintiff and probable cause to arrest him based on his observations Plaintiff was operating the vehicle with no valid license tags and no vehicle registration on display.  (*Id.* at ¶ 14). After Plaintiff's arrest, Corporal Pyle learned that Plaintiff had purchased the vehicle from Miller, who had advised Plaintiff that the vehicle was not registered and should not be operated on the road.  (*Id.* at ¶ 13).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *See Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.*  Further, affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."  FED. R. CIV. P. 56(c)(4); *see also Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay

statements).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).  If the movant demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  To sustain this burden, the nonmoving party cannot rest on the allegations of the pleadings.  FED. R. CIV. P. 56(c)(1); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed."  *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

There is an additional wrinkle to consider on summary judgment when video evidence is available.  *See Pinder v. Skero*, 375 F.Supp.3d 725, 735–36 (S.D. Tex. 2019).  When one party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).  "[A]lthough courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."  *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016).

## IV.    DISCUSSION

### A.    EXCESSIVE FORCE

Plaintiff first claims he was subject to excessive force in violation of the Fourth Amendment. (Dkt. No. 17 at 4). The Fourth Amendment protects a person from being subjected to excessive force during an arrest. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 445–46, 452 (5th Cir. 1998). To state a claim for excessive force during the course of an arrest, a plaintiff "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quotation omitted).

Corporal Pyle contends that Plaintiff cannot show he suffered any injury resulting from force applied by Corporal Pyle "that was clearly excessive to the need." (Dkt. No. 54 at 6). According to Corporal Pyle, the video taken of the back seat of his patrol car reveals that Plaintiff's injuries to his head were self-inflicted. (*Id.*). Corporal Pyle contends, therefore, that there is no excessive force violation. (*Id.* at 6–7).

Plaintiff responds that Corporal Pyle punched him in the face and head before taking Plaintiff to the patrol car on the night of July 3, 2016. (Dkt. No. 61 at 3, 5–6). Plaintiff contends that Corporal Pyle applied force in an excessive and unreasonable manner that caused him injuries. (*Id.* at 6).

In this case, Plaintiff's version of how Corporal Pyle struck him before placing him in the patrol car is contradicted by the video evidence presented. The uncontroverted video evidence of the July 3, 2016 incident shows that: (1) Plaintiff was uninjured when Corporal Pyle placed him in the patrol car during the course of his arrest; (2) while being the only person in the patrol car, Plaintiff struck his own head multiple times on the partition between the front seat and pack seat of the patrol vehicle; (3) Plaintiff then struck his own head two more times on the partition in a

more violent manner; and (4) after his second set of strikes, Plaintiff began bleeding from his forehead. (Video at 3:24 to 4:10). The medical records further show that Plaintiff was treated for head lacerations consistent with Plaintiff's actions as depicted in the video. (Dkt. No. 61 at 24–27).

As a result, even when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether Corporal Pyle used any force, much less excessive force, during the course of Plaintiff's arrest as Plaintiff's head injuries were self-inflicted. Indeed, the video evidence demonstrates that Plaintiff's statements to this Court are, at best, untrue and misleading. Corporal Pyle, therefore, is entitled to summary judgment as to Plaintiff's excessive force claim.[3]

### B.    FALSE ARREST

Plaintiff next claims that Corporal Pyle arrested him without a proper arrest warrant or probable cause in violation of the Fourth Amendment. (Dkt. No. 17 at 4). An officer violates the Fourth Amendment if an arrest is made without a proper arrest warrant or probable cause. *Johnston v. City of Houston*, 14 F.3d 1056, 1061 (5th Cir. 1994) (citations omitted); *see also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). In this case, it is undisputed that Corporal Pyle acted without the benefit of a warrant. The Court's inquiry, therefore, focuses on the existence of probable cause to support Plaintiff's arrest.

---

[3]    In his Response to Pyle's Motion, Plaintiff claims that Corporal Pyle used excessive force against him on a subsequent occasion, which allegedly occurred after Plaintiff was released from the hospital following the July 3, 2016 incident. (Dkt. No. 61 at 3). Plaintiff also claims that Corporal Pyle denied him medical care following his arrest on that day. (*Id.* at 3, 5). Plaintiff, however, did not raise these claims in his amended complaint (Dkt. No. 17), which is the operative pleading in this case, or in his more definite statement (Dkt. No. 30). Because Plaintiff has not amended this action to include these claims, but rather presents them for the first time in his Response to Pyle's Motion, they are not properly before the Court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis omitted).

"An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001)). "Moreover, evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest; probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. (quotation and citation omitted). Accordingly, an officer's own testimony regarding the occurrence of an arrestable violation can by itself support a finding of probable cause, even in the face of the plaintiff's denial of that violation. *See id.*

Corporal Pyle contends that the facts demonstrate he had probable cause to arrest Plaintiff based on his reasonable belief Plaintiff had committed two traffic violations. (Dkt. No. 54 at 7–9). Plaintiff responds that there existed no facts to give Corporal Pyle a reasonable belief Plaintiff had committed any crime. (Dkt. No. 61 at 8).

In this case, Corporal Pyle has presented competent summary judgment evidence demonstrating that: (1) Plaintiff's vehicle was parked at a business adjacent to and only accessible by a public street; (2) Corporal Pyle noticed that there was no key in the ignition slot in the steering column and that Plaintiff had a screwdriver in it instead; (3) Plaintiff repeatedly claimed ownership

10

of the vehicle during his encounter with Corporal Pyle; and (4) the vehicle had neither valid tags nor registration.  (Dkt. No. 54-1 at ¶¶ 4–6; Video at 1:55 and 2:48).  The failure to display proper vehicle registration through a valid registration sticker and two proper license plates are lawful grounds for arrest under Texas law.  *See* TEX. TRANSP. CODE §§ 502.473 (operation of vehicle without registration insignia); 504.943(a) (failure to display two license plates in a proper manner); 543.001 (warrantless arrest permitted for traffic violations).

Based on the uncontroverted summary judgment evidence presented, Corporal Pyle had probable cause to arrest Plaintiff on traffic violations related to the failure to display registration and license plates on his vehicle.  As the Supreme Court has held, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater*, 532 U.S. at 354, 121 S.Ct. at 1557.  Plaintiff's arrest, therefore, was constitutional under the Fourth Amendment.

The Court notes that, in connection with the June 3, 2016 incident, Plaintiff was ultimately charged with interference with public duties and resisting arrest.  (Dkt. No. 54-1 at ¶ 12).  Nevertheless, "[p]robable cause supports a stop or arrest so long as the arresting officer had probable cause to arrest the suspect for any criminal offense, regardless of the stated reason for the arrest."  *Hernandez v. City of Lubbock*, No. 5:14-CV-159, 2015 WL 11170651, at *5 (N.D. Tex. May 8, 2015) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55, 125 S.Ct. 588, 593–95, 160 L.Ed.2d 537 (2004)); *see also United States v. Bain,* 135 F. App'x 695, 696 (5th Cir. 2005) ("An arrest does not violate the Fourth Amendment if the officer making the arrest has probable cause to arrest the defendant for any crime, regardless of whether the defendant can be lawfully arrested for the crime for which the officer states or believes he is making the arrest.").

11

Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether Corporal Pyle had probable cause to arrest Plaintiff on June 3, 2016.  Corporal Pyle, therefore, is entitled to summary judgment as to Plaintiff's Fourth Amendment claim for false arrest.

**V.    CONCLUSION**

For the reasons set forth above, Corporal Pyle's Motion for Summary Judgment, (Dkt. No. 54) is **GRANTED**, Plaintiff's Fourth Amendment claims of excessive force and false arrest are **DISMISSED WITH PREJUDICE**, and Plaintiff's Motion for Direct and Final Judgment (Dkt. No. 64) is **DENIED**.

This is a **FINAL JUDGMENT**.

SIGNED this March 25, 2021.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**